# CIRCUIT COURT OF FAIRFAX COUNTY

Athena Efessiou

v.

Christos Efessiou et al.

November 12, 1996

Case No. (Chancery) 143425

BY JUDGE THOMAS S. KENNY

This matter is before the Court on Defendants' Demurrer to all eight counts of Complainant's Amended Bill of Complaint. After careful review of counsels' arguments, the Court sustains Defendants' Demurrer to Count I against Strategic in its entirety. As concerns the cause of action in Count I against Husband and Angelides, the Court sustains Count I in part, with respect to the conveyance of shares from Complainant Athena Efessiou ("Wife") to Defendant Christos Efessiou ("Husband") and overrules Defendants' Demurrer to Count I in part, with respect to the dilution of ownership in Strategic resulting from the issuance of shares by Strategic to Defendant Alicia Angelides. Furthermore, the Court sustains Defendants' Demurrer to counts II through VI, overrules Defendants' Demurrer to Count VII, and sustains the Demurrer to Count VIII.

## I. *Background*

On August 9, 1996, Wife filed an Amended Bill of Complaint against Defendants, Husband, Angelides, and Strategic Implications International ("Strategic"), to set aside fraudulent conveyances of Strategic stock. Strategic is a Maryland corporation, with its principal place of business in Virginia, which Husband and Wife created and jointly owned during the course of the marriage and before the instant cause of action arose. Husband and Wife owned 90% and 10% of the outstanding stock in Strategic, respectively. The Bill alleges that Defendants in September 1995, fraudulently conveyed 50% of the outstanding stock in Strategic, or 495 shares of stock, out of the marital estate as determined under Maryland Family Law Code § 8-201. In March 1996, Husband initiated divorce proceedings against Wife in the Montgomery County Circuit Court.[1]

The depletion of the marital estate arose as a result of two separate transactions, both of which the Bill appears to characterize as a fraudulent conveyance and asks the Court to set aside. The first transaction consists of the transfer of Strategic stock from Wife to Husband. In September 1995, Wife allegedly entered into an agreement with Husband to convey her 10% interest in Strategic to him and to resign as an officer and director of Strategic. The Bill avers that such agreements to sell and resign were backdated to become effective in April 1994 and September 1995 respectively. Furthermore, Wife allegedly only signed the requisite stock certificates evidencing her ownership interest in Strategic to Husband in November 1995, after considerable pressure of Husband to end the marriage and received no consideration for such transfer in ownership.

The second transaction consists of the issuance of Strategic stock by Strategic to Angelides. On September 8, 1995, Strategic entered into an agreement to sell fifty percent of all outstanding stock in Strategic, or 495 shares of stock, to Angelides. On September 11, 1995, Husband purportedly called a Board of Directors meeting of Strategic and elected Angelides to the Board of Directors and to the positions of Vice President, Secretary, and Treasurer. At this meeting, the Board approved the earlier issuance of the 495 shares of Strategic to Angelides. The Bill alleges that Wife did not receive notice of the Board of Directors meeting, was unaware of the issuance of 495

---

[1] On March 5, 1996, Husband filed a Complaint for a Limited Divorce in the Circuit Court for Montgomery County, Maryland, Civil Action No. 148593. On April 4, 1996, Wife filed an Answer to the Complaint for a Limited Divorce and a Counterclaim for Absolute Divorce on grounds of adultery.

shares of stock in Strategic to Angelides, and was not offered an opportunity to exercise her preemptive rights to stock in Strategic.

Wife's Amended Bill of Complaint raises eight causes of action against Defendants for equitable and monetary relief arising from the foregoing transactions. Counts I and II bring claims against Defendants for fraudulent conveyance and conspiracy to effect a fraudulent conveyance, respectively. Counts III through VIII bring claims for monetary relief for violations of the Maryland Corporations and Associations Code § 2-402 (lack of authority to approve transfer of stock), § 2-404 (illegal election of directors), § 2-408 (illegal action by directors); § 2-204(b) (illegal issuance of stock), § 2-205 (denial of preemptive rights), and § 2-216 (prohibited acts section). Defendants demur to each count.

## II. *Demurrer to Count I*

With respect to Wife's request for equitable relief to set aside all transfers of Strategic stock under Count I, the Court must decide, first, whether Wife has standing to seek relief under the fraudulent conveyance statute, Va. Code Ann. § 55-80; and second, whether the respective transfers of Strategic stock from Wife to Husband and from Strategic to Angelides each constitute a fraudulent conveyance under § 55-80. The Court holds that Wife has standing as an "other person[]" to bring a cause of action under Code § 55-80. The Court further finds that, if the facts alleged in Wife's pleading are taken as true for purposes of ruling on Defendants' demurrer, only the issuance, at Husband's direction, of Strategic stock from Strategic to Angelides would constitute a fraudulent conveyance under Code § 55-80.

A. The three classes of parties who have standing to bring an action under Code § 55-80 are "creditors," "purchasers," and "other persons." Va. Code Ann. § 55-80. Only those persons similarly situated to "creditors" and "purchasers" constitute "other persons" within the meaning of this section. *Estate Constr. Co. v. Miller & Smith Holding Co.*, 14 F.3d 213 (4th Cir. 1994). Past Virginia fraudulent conveyance cases have identified as "other persons" spouses who are or may be entitled to spousal support.[2] The rationale

---

[2] *See Crowder v. Crowder*, 125 Va. 80 (1919) (holding that wife with claim for divorce and alimony on the ground of desertion comes within the classification of "other persons"); *see also Davis v. Davis*, 239 Va. 657 (1990) (finding that wife who has been awarded spousal support pendente lite, but not yet a final decree of divorce, has standing as an "other person[]" under Code § 55-80 to set aside a deed executed by Defendant husband conveying

underlying such cases likewise supports the inclusion of spouses entitled to equitable distribution in the category of "other persons," particularly where, as alleged in the instant case, marital property is transferred in the waning days of marriage with the fraudulent intent to frustrate an equitable distribution claim. Amended Bill, at ¶¶ 45, 47, 58, 59. Based on the allegations raised in the Amended Bill, the Court finds that Wife falls in the category of "other persons" eligible to seek relief under Code § 55-80.

B. The requisite elements of a fraudulent conveyance under Code § 55-80 are (i) the conveyance of property to another (ii) with the intent to hinder, delay, or defraud (iii) a creditor, purchaser, or other person (iv) from what they are or may be lawfully entitled to. Code § 55-80. The form of the conveyance, be it by agreement to sell or issuance of stock, is immaterial.[3] *Spence v. Repass*, 94 Va. 716 (1897). To fall within the ambit of the statute, however, the purpose of the grantor must be fraudulent and the grantee must have notice of such fraudulent intent. *Crowder*, 125 Va. 80 (1919). Evidence of such fraudulent intent and notice thereof may be proven by circumstantial evidence. *Witz, Biedler & Co. v. Osburn*, 82 Va. 227 (1887); *Bartl v. Garfinkel*, 30 Bankr. 199 (Bankr. E.D. Va. 1983).

Wife's Amended Bill alleges that both the conveyance of shares from Wife to Husband and the issuance of shares from Strategic to Angelides constitute a fraudulent conveyance under Code § 55-80. Concerning the first conveyance, the Court finds that Wife cannot challenge her conveyance of stock to Husband as fraudulent under Code § 55-80 since she was a party to the questionable conveyance and not an injured third party, i.e., "other person[]." The fraudulent conveyance statute does not protect the interests of a defrauded transferor. The subsequent conveyance of shares by Strategic to Angelides, however, constitutes a fraudulent conveyance within the scope of § 55-80

---

the marital residence titled in husband's name to a friend). The allegations raised in the Amended Bill support the inference that Wife may be entitled to spousal support under Maryland law on the ground of Husband's alleged adultery with Angelides. Amended Bill of Complaint, at ¶¶ 54, 56. In reliance on *Davis* and *Crowder*, Wife's potential future entitlement to spousal support also would place her in the category of "other persons" eligible to seek relief under Code § 55-80.

[3] In the instant case, the alleged fraudulent dilution of Strategic stock is functionally equivalent to a fraudulent conveyance. A dilution occurs when a company sells stock at a price below book value, thereby reducing the company's book value per share. *Appalachian Power Co. v. Commonwealth*, 216 Va. 617, n. 4 (1976). A dilution therefore deprives a shareholder of property to which shareholder is entitled the same way as would a fraudulent conveyance of stock without valid consideration.

based on the circumstances indicative of fraudulent intent alleged in Plaintiff's Amended Bill. The Bill alleges that the conveyance of shares by Strategic to Angelides constitutes an illegal issuance of stock, void of proper authorization, and lacking fair market value consideration. Amended Bill, at ¶¶ 34-43. The Bill further alleges that Husband and Angelides were involved in an adulterous relationship. Amended Bill, at ¶¶ 22-23. These alleged facts support an inference of fraudulent intent.[4] Taking such alleged facts and inferences drawn therefrom as true, the Court consequently holds that Count I states a claim for relief for fraudulent conveyance under Code § 55-80 for the transfer of shares from Strategic to Angelides.

C. Count I of the Amended Bill further brings a cause of action against Strategic for fraudulent conveyance under Code § 55-80. The Court finds that Count I fails to state a claim for relief against Strategic. Foremost, Count I fails to allege facts implicating Strategic in the fraudulent conveyance of Strategic stock to Angelides. Moreover, Count I does not allege that Husband was acting within the scope of employment in order to attribute Husband's fraudulent acts to Strategic. Therefore, the Court sustains Defendants' Demurrer to Count I against Strategic in its entirety.

### III. *Demurrer to Count II*

Under Count II, Wife moves the Court to enter a monetary judgment against all Defendants for conspiring to effect a fraudulent conveyance. Defendants demur to Count II on the bases that there is no cause of action for conspiracy to effect a fraudulent conveyance and that Count II is barred by the intracorporate conspiracy doctrine. The Court finds that Count II fails to state a claim for monetary relief against any of the Defendants.

A civil conspiracy claim requires two or more persons combined to accomplish, by some concerted action, an unlawful purpose or some lawful purpose by unlawful means resulting in damage to the plaintiff. *See, e.g., Glass v. Glass*, 228 Va. 30 (1984); *Commercial Business Systems, Inc. v. BellSouth Services, Inc.*, 249 Va. 39 (1995). The damage caused by the acts committed in furtherance of a conspiracy is the foundation of a civil action of conspiracy. *Commercial Business Systems*, 249 Va. at 48. Consequently, there can be no civil action for conspiracy where the unlawful act underlying the conspiracy claim does not allow for a damage award.

---

[4] *See Hutcheson v. Savings Bank*, 129 Va. 281 (1921) (finding that relationship of parties and want of consideration constitute circumstances indicative of fraud, i.e., badges thereof).

With respect to the instant cause of action for conspiracy to effect a fraudulent conveyance, Virginia case law expressly provides that § 55-80 does not authorize an in personam judgment when a fraudulent conveyance is set aside. *Cheatle v. Rudd's Swimming Pool Supply Co.*, 234 Va. 207, 212 (1987); *Mills v. Mills Harness Co.*, 229 Va. 155 (1985). In *Price v. Hawkins*, 247 Va. 32 (1994), the Supreme Court of Virginia crafted a narrow exception to the general rule against the imposition of personal liability in fraudulent conveyance cases, under which a court may impose personal liability on a transferee when the property fraudulently transferred cannot be identified in any form because it has been commingled with funds in the hands of the transferee, thereby leaving the defrauded transferor with no effective remedy under § 55-80 unless the transferee is held personally liable. In *Price*, the property fraudulently conveyed to transferee was cash money. In the instant action, the property allegedly fraudulently conveyed to Angelides was certificates of stock. Such stock is still in existence and can be returned to Strategic if the alleged fraudulent transfer is declared void.[5] The allegation raised in the Amended Bill concerning the potential transfer of Strategic stock out of the names of Husband and Angelides[6] is based purely on speculation and does not support an inference of commingling of funds. The Court finds that Wife has an effective remedy against Angelides under § 55-80 and, therefore, holds that Count II fails to state a claim for relief against Angelides.

The Amended Bill further demands the imposition of a personal judgment against Husband and Strategic for conspiracy to effect a fraudulent conveyance. Based on the Court's decision to sustain the demurrer to Count II against Angelides, the only two remaining alleged conspirators are Husband and Strategic. Under the intracorporate conspiracy doctrine, a corporation cannot conspire with itself. *Bowman v. State Bank*, 229 Va. 534, 541 (1985); *Nedrich v. Jones*, 245 Va. 465 (1993). The doctrine bars a claim of conspiracy where the conspirators are comprised only of the corporation and individuals acting for the corporation. *See Nedrich*, 245 Va. at 473. In the case at bar,

---

[5] The *Price* court distinguishes the fraudulent conveyance of cash money from personal property as follows: "This is not a situation where the fraudulent grantor conveys personal property that requires title records for proof of ownership, like motor vehicles, and the property is still in existence and can be located for attachment or levy when the fraudulent transfer is declared void. Here, cash money has been transferred, and if merely ordered to return money to court, the transferees may refuse to do so, or claim that the money transferred has been spent and is no longer available." *Price*, 247 Va. at 37.

[6] The Amended Bill alleges that "Husband and Angelides travel regularly overseas and may initiate efforts to have stock transferred out of the names of Husband and Angelides." Amended Bill, at ¶ 48.

Count II of the Amended Bill makes conflicting allegations on whether or not Husband was acting for the corporation or individually in transferring Strategic stock to Angelides.[7] If Husband was acting for the corporation, the intra-corporate conspiracy doctrine clearly bars recovery against Strategic and Husband on Count II under *Bowman*. If Husband was acting individually, the doctrine does not bar recovery against Strategic and Husband. Nevertheless, the Court finds that Count II, regardless of the intracorporate conspiracy doctrine, still fails to state a claim for relief against Husband and Strategic under the general bar against the imposition of personal liability under § 55-80, and the consequent inability of Count II to satisfy the damages element of a civil conspiracy claim. Since Wife has an effective remedy against Defendants under § 55-80, the Court sustains the demurrer to Count II in its entirety.

### IV. *Demurrer to Counts III through VII*

In considering Defendants' Demurrer to Counts III through VII, the Court first must determine the threshold issue of whether Wife was a shareholder of Strategic at the time the alleged violations of the Maryland Corporations and Associations Code arose (i.e., September 8-13, 1995) and thus has standing to bring individual and/or derivative claims against Defendants on Counts III through VII. The Court finds that Wife was a shareholder of Strategic when the instant cause of action arose.

Under the law of Maryland and Virginia,[8] the transfer of shares of corporate stock is governed by Article 8 of the Uniform Commercial Code ("UCC"), under which certificates of stock are negotiable instruments. UCC § 8-105(1). Article 8 provides that a contract for the sale of securities is not enforceable unless delivery of the security has been accepted or payment has been made. UCC § 8-319. Delivery of a stock certificate to a purchaser occurs when the purchaser acquires possession of the security. UCC § 8-313. In the instant

---

[7] *See* Amended Bill, at ¶ 63 (stating that "Husband, Angelides and Strategic conspired to transfer 495 shares of stock of Strategic to Angelides without proper authorization"). *But see* Amended Bill, at ¶ 35 (noting that "[o]ne of the first acts of this purported new Board of Directors was to authorize the issuance of 495 shares of Strategic to Angelides without fair market value consideration).

[8] The Court adopts the general view that the law of the state of incorporation governs questions as to title to stock, proof of ownership thereof, and as to validity, method, and effect of transfer thereof. 18 Am. Jur. 2d § 21. Nevertheless, since both Maryland and Virginia have adopted Article 8 of the UCC, no further conflict of law analysis is necessary. *See* Va. Code Ann. § 8.8-313; Md. Code Ann. Com. Law § 8-313.

case, delivery occurred when Wife signed the stock certificates evidencing her 10% ownership interest in Strategic over to Husband in November 1995. Consequently, the Court finds that Wife was a shareholder with standing to bring the actions alleged in Counts III through VII against Defendants.

A further issue for the Court to consider is whether Counts III through VII are void for multifariousness under Equity Rule 2:19. Under *Brown v. Bedford City Land & Imp. Co.*, 91 Va. 31 (1895), claims made in the right of an individual against a corporation may not be joined with claims brought in a representative capacity on behalf of that corporation. If the Court finds that Wife's claims under Counts III through VII are derivative claims, such claims are void for multifariousness, and Wife does not have standing to demand a money judgment in her favor based on such derivative claims. If the Court, however, finds that the claims in question are personal claims, such claims need not be dismissed as multifarious. The Court holds that Wife's claims on Counts III through VI are derivative and that Wife's claim on Count VII is an individual claim.

The test of a derivative action is whether a recovery would benefit the corporation generally and all shareholders or only an individual or a determinative group or class of individuals. *Abella v. Universal Leaf Tobacco Co.*, 495 F. Supp. 713 (E.D. Va. 1980); *Virginia Passenger & Power Co. v. Fisher*, 104 Va. 121 (1905). A derivative claim enforces a corporate cause of action where the corporation has not sued to protect its own right. Wife's claims under Maryland Code §§ 2-402, 2-404, 2-504, 2-408, and 2-204(b) to set aside the actions of an illegally structured Board of Directors meeting and for the award of monetary damages resulting from the illegal election of Directors, the illegal action by Directors, and the illegal issuance of stock, in effect enforce the rights of all shareholders, not a right particular to one individual. The Court sustains Defendants' Demurrer on Counts III, IV, V, and VI.

In contrast, Wife's claim against Strategic under Maryland Code § 2-205 for violation of her preemptive rights constitutes a personal action, individual to Wife stockholder, and thus is not void for multifariousness. Furthermore, contrary to Defendants' assertions, Count VII states a cause of action under Maryland Code § 2-205 for violation of Wife's preemptive rights. The Bill properly alleges that Strategic failed to offer to Wife her preemptive rights and that the stock issued to Angelides does not comport with the requirements otherwise exempting Strategic from compliance with Wife's preemptive rights under § 2-205. Amended Bill, at ¶¶ 101-104. The Court overrules Defendants' Demurrer to Count VII.

## V. *Demurrer to Count VIII*

Finally, the Court must consider whether Wife's claim under Count VIII for violation of Maryland Code § 2-216 gives rise to a civil cause of action for monetary relief. Defendants rely on Virginia case law for the proposition that "a violation of a criminal statute does not give rise to a civil cause of action for monetary relief against a person alleged to have violated the penal code." *See, e.g., Van Zandt and Gussler, Inc. v. Washington*, 245 Va. 356 (1993); *Pettingill v. United States*, 867 F. Supp. 380 (E.D. Va. 1994); *Williamson v. Old Brogue, Inc.*, 232 Va. 350, 355 (1980). While Defendants' argument is misplaced in that Maryland Code § 2-216 is in fact a civil statute not a penal statute, the Maryland legislature has accorded only criminal penalties for its violation. Md. Corp. & Ass. Code Ann. § 2-216(c). The Court sustains Defendants' Demurrer to Count VIII.

## VI. *Conclusion*

Because this is the second round of demurrers in this case, the demurrers that are sustained are sustained without leave to amend. Defendants shall have twenty-four days from the date of this letter to file an answer to the remaining claims.