Maurer v. SlickEdit, Inc., 2005 NCBC 1

STATE OF NORTH CAROLINA

WAKE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
04 CVS 10527

JILL L. MAURER,

Plaintiff,

v.

SLICKEDIT, INC., ANDRE BOISVERT,
ERICA H. BOISVERT, J. CLARK MAURER,
and HOWARD H. LEWIS,

Defendants.

ORDER AND OPINION

{1}     This matter comes before the Court on defendants' motion to dismiss pursuant to Rule 12(B)(6) of the North Carolina Rules of Civil Procedure.  Plaintiff bases her claims against SlickEdit, Inc. ("SlickEdit") and SlickEdit's current officers and members of the Board of Directors on claims including breach of fiduciary duty, unfair and deceptive trade practices, oppression, constructive fraud, fraud, civil conspiracy, unjust enrichment, rescission and reformation and slander.  In addition, subsequent to defendant's motion to dismiss pursuant to Rule 12(B)(6), plaintiff filed a motion to amend the complaint in the above captioned case.  Defendants object to plaintiff's motion to amend.

{2}     After considering the briefs and oral arguments of each party on both the defendants' motion to dismiss pursuant to Rule 12(B)(6) and on plaintiff's motion to amend the complaint, the Court grants the motions in part and denies them in part.

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP by Mark A. Ash and J. Mitchell Armbruster for Plaintiff Jill L. Maurer.*

*Womble Carlyle Sandridge & Rice by Pressly M. Millen for Defendants SlickEdit, Inc., Andre Boisvert, Erica H. Boisvert, J. Clark Maurer, and Howard H. Lewis.*

I.
FACTUAL BACKGROUND

{3}     Plaintiff Jill L. Maurer is a resident of Wake County, North Carolina.  Plaintiff is currently a 42.5% shareholder in SlickEdit.  Plaintiff served as CEO of SlickEdit until her termination in April 2004.  She is divorced from defendant Clark Maurer.

{4}     Defendant SlickEdit is a corporation organized under the laws of Virginia with its principal place of business in Morrisville, Wake County, North Carolina.

{5}     Defendant J. Clark Maurer is a resident of Wake County, North Carolina.  Mr. Maurer is a 42.5%

shareholder of SlickEdit, a member of the Board of Directors of SlickEdit, and the Chief Technology Officer of SlickEdit.

{6}    Defendant Andre Boisvert is a resident of Wake County, North Carolina.  Mr. Boisvert is Chairman of the Board of Directors of SlickEdit.  Mr. Boisvert is an 11% shareholder in SlickEdit.  He is a consultant or officer in several other businesses driven by the creation, production, or marketing of computer software.

{7}    Defendant Erica H. Boisvert is a resident of Wake County, North Carolina.  Mrs. Boisvert is a member of the Board of Directors of SlickEdit.  Ms. Boisvert serves as President and Chief Operating Officer of SlickEdit.  Ms. Boisvert is a 2.5% shareholder in SlickEdit.  She is married to Andre Boisvert.

{8}    Howard H. Lewis is a resident of Wake County, North Carolina.  Mr. Lewis is a 1% shareholder in SlickEdit and a member of the Board of Directors of SlickEdit.  The claims against Mr. Lewis have been dismissed.

{9}    Plaintiff alleges the following facts which, for the purposes of this motion, will be treated as true.

{10}    In December of 1987, Jill and Clark Maurer married.  In early 1988, SlickEdit (formerly known as MicroEdge) was incorporated in Virginia.  Mr. Maurer provided the programming of the product and oversaw the technical aspects of the product, while plaintiff primarily served SlickEdit in a managerial role.  Later in 1988, the company first released the product SlickEdit, "an editor for programmers intended to work on multiple computer platforms." (First Am. Compl. at ¶ 21.)  The product was well received and currently is the leading product in the industry. (First Am. Compl. at ¶ 21.)  In or about 1990, plaintiff and Mr. Maurer relocated to Raleigh, North Carolina.  On August 5, 1992, Mr. Maurer assigned the rights to the software he developed to SlickEdit, subject to payment of an 8% royalty on all revenues the company derived from use of the software.

{11}    In 1998, the Maurers attempted to sell the corporation with the consultation of Paul Rasmussen.  However, the Maurers did not sell SlickEdit at that time, due to their dissatisfaction with the price offered for the company, which was not within their target range of $25-$30 million for the company.  (First Amd. Compl. ¶ 25.)  By agreement, the Maurers could not sell SlickEdit within 18 months of terminating the relationship with Mr. Rasmussen. (First Amd. Compl. ¶ 25.)

{12}    In 2000, plaintiff met Andre Boisvert.  Mr. Boisvert represented himself as someone with experience and connections in the industry. (First Amd. Compl. ¶ 27.)  Shortly thereafter, Mr. Boisvert joined the SlickEdit Board of Directors.  Later in 2000, adhering to the advice of Mr. Boisvert, SlickEdit hired Mr. Boisvert's wife, Erica Boisvert to serve as the Chief Financial Officer of SlickEdit. (First Amd. Compl. ¶ 29.)  In 2001, Mr. Boisvert became the Chairman of the Board of Directors of SlickEdit.

{13}    By the fall of 2001, the marriage of plaintiff and Mr. Maurer had deteriorated. (First Amd. Compl. ¶ 32.)  On December 31, 2001, Mr. Maurer signed a termination agreement which terminated the agreement executed on August 5, 1992 that provided an 8% royalty payment to Mr. Maurer on all revenues derived from use of the SlickEdit software.  This agreement was executed with the advice of Mr. Boisvert that the company would be better positioned for a future sale with ownership of the intellectual property rights. (First Amd. Compl. ¶ 37.)  The next day, January 1, 2002, both plaintiff and Mr. Maurer signed employment agreements with SlickEdit which included a provision for each to receive an annual bonus of 4% of the company's licensing revenue.  On the same day, plaintiff and Mr. Maurer legally separated. (First Amd. Compl. ¶ 40.)

{14}    In or about early 2002, documents were executed to officially document the ownership of the

company. (First Amd. Compl. ¶ 35.) Both plaintiff and Mr. Maurer owned 42.5% of the company. Mr. Boisvert owned 11% of the company and Ms. Boisvert owned 2.5% of the company. Mr. Boisvert obtained his shares in exchange for a promissory note. The Board of Directors subsequently voted to forgive a portion of Mr. Boisvert's loan. (First Amd. Compl. ¶ 36.) In addition, Ms. Boisvert obtained her shares in exchange for a promissory note which was later forgiven at the direction of the Board. (First Amd. Compl. ¶ 36.)

{15} At approximately the same time, Mr. Boisvert agreed to work as a consultant to SlickEdit, primarily to oversee programming development. Until agreeing to this position, Mr. Boisvert had worked for SlickEdit "with a view to increasing sales and finding a buyer for the company." (First Amd. Compl. ¶ 38.)

{16} On February 14, 2003 the Maurers were legally divorced. (First Amd. Compl. ¶ 40.)

{17} During 2003, plaintiff would periodically ask the Boisverts for an update on the plan to sell the company. (First Amd. Compl. ¶ 43.) No concrete information was ever presented to plaintiff. (First Amd. Compl. ¶ 43.) Mr. Boisvert informed plaintiff that he would rather wait to sell for the benefit of the company. (First Amd. Compl. ¶ 43.) Plaintiff received inquiries from investment bankers interested in the purchase of the company and would inform Mr. Boisvert of their interest. (First Amd. Compl. ¶ 43.) After providing this information to Mr. Boisvert, Plaintiff never received any information or feedback regarding those inquiries. (First Amd. Compl. ¶ 43.)

{18} On or about early 2004, Mr. Boisvert stated at a board meeting that plaintiff was interested in selling her personal shares. (First Amd. Compl. ¶ 45.) Although plaintiff had not expressed any current interest in selling her personal shares, after the meeting, plaintiff began to research the idea of selling her shares. (First Amd. Compl. ¶ 45.) Plaintiff continued to investigate and research the possibility of selling not only her personal shares but SlickEdit in its entirety, consulting an attorney and gauging the interest of Mr. Maurer. (First Amd. Compl. ¶ 45.) Mr. Maurer was "interested in at least looking into the sale of the company." (First Amd. Compl. ¶ 45.) Soon thereafter, plaintiff discussed the possibility of selling the company with Mr. Boisvert. (First Amd. Compl. ¶ 46.) Mr. Boisvert did not express interest in selling the company but offered to buy plaintiff's shares. (First Amd. Compl. ¶ 46.) Mr. Boisvert forwarded inquiries to plaintiff with purchase offers that plaintiff found to be "at fire-sale prices." (First Amd. Compl. ¶ 46.)

{19} At the March 2004 board meeting of the Board of Directors of SlickEdit, Mr. Boisvert announced that plaintiff wanted to sell the company. (First Amd. Compl. ¶ 48.) Plaintiff expressed her interest in that possibility, but stated that she would not be interested in selling only her personal shares. (First Amd. Compl. ¶ 48.)

{20} In early April 2004, plaintiff requested an estimate of SlickEdit's first quarter financials for tax planning purposes. (First Amd. Compl. ¶ 50.) Plaintiff's request was met with resistance by Ms. Boisvert. (First Amd. Compl. ¶ 50.) On April 15, 2004, after more resistance from Ms. Boisvert, a tax free distribution was made to both plaintiff and Mr. Maurer to meet tax obligations including the taxes derived from ownership of SlickEdit, which is an S corporation. (First Amd. Compl. ¶¶ 51,52.)

{21} Mr. Boisvert called a special board meeting for April 20, 2004. (First Amd. Compl. ¶ 54.) At the beginning of the special board meeting, plaintiff apologized for any problems caused by the tax distribution issue. (First Amd. Compl. ¶ 54.) Plaintiff and Mr. Maurer signed a document reflecting their "action without meeting" to make the distribution of April 15, 2004. (First Amd. Compl. ¶ 54.)

Subsequently, Mr. Boisvert stated that the Board of Directors had decided that plaintiff was to be terminated as CEO. (First Amd. Compl. ¶ 54.) The board members, excluding plaintiff, voted in favor of plaintiff's termination. (First Amd. Compl. ¶ 55.) On April 30, 2004, the Board of Directors promoted Ms. Boisvert to President and COO and forgave her promissory note given for her 2.5% ownership. (First Amd. Compl. ¶ 60.)

{22}	Plaintiff claims that she has been wrongfully denied the bonus payment agreed to in her employment contract signed on January 1, 2002. (First Amd. Compl. ¶ 64.) Plaintiff claims that the individual defendants and SlickEdit breached fiduciary duties owed to plaintiff. (First Amd. Compl. ¶ 63.) Further, plaintiff alleges that defendants engaged in unfair or deceptive acts in or affecting commerce, in violation of N.C. Gen. Stat. § 75-1.1. (First Amd. Compl. ¶ 68.) Plaintiff alleges individual defendants conduct constitutes oppression. (First Amd. Compl. ¶ 71.) Plaintiff alleges that defendants' breach of fiduciary duty amounts to constructive fraud. (First Amd. Compl. ¶ 75.) Plaintiff alleges Defendants Erica and Andre Boisvert engaged in fraud against plaintiff. (First Amd. Compl. ¶¶ 79-85.) Plaintiff claims that Defendants Erica and Andre Boisvert engaged in civil conspiracy against plaintiff. (First Amd. Compl. ¶ 89.) Plaintiff claims to have been damaged by Defendants Erica and Andre Boisvert's unjust enrichment. (First Amd. Compl. ¶¶ 93-95.) Plaintiff seeks the rescission of the agreements under which Defendants Erica and Andre Boisvert obtained their shares. (First Amd. Compl. ¶ 97.) Plaintiff seeks rescission and/or reformation of "any documents as necessary to reinstate her 4% royalty, salary, position, and all other compensation and benefits." (First Amd. Compl. ¶ 98.) Plaintiff alleges that Mr. Maurer, Mr. Boisvert and Ms. Boisvert have spoken defamatory words by stating, among other things, that plaintiff stole property belonging to Mr. Maurer. (First Amd. Compl. ¶¶ 100, 101.)

{23}	Subsequent to the hearing on defendants' motion to dismiss, plaintiff filed a voluntary dismissal without prejudice of claims against Mr. Lewis on December 27, 2004.

II.

LEGAL STANDARD

{24}	When ruling on a motion to dismiss under Rule 12(b)(6), the court must determine "whether, as a matter of law, the allegations of the complaint . . . are sufficient to state a claim upon which relief may be granted." *Harris v. NCNB*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). In ruling on a motion to dismiss, the court must treat the allegations in the complaint as true. *See Hyde v. Abbott Lab., Inc.*, 123 N.C. App. 572, 575, 473 S.E.2d 680, 682 (1996). The court must construe the complaint liberally and must not dismiss the complaint unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim. *See id.* When considering a motion under Rule 12(b)(6), the court is not required to accept as true any conclusions of law or unwarranted deductions of fact in the complaint. *Sutter v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970). When the complaint fails to allege the substantive elements of some legally cognizable claim, or where it alleges facts which defeat any claim, the complaint should be dismissed under Rule 12(b)(6). *See Hudson Cole Dev. Corp. v. Beemer*, 132 N.C. App. 341, 511 S.E.2d 309 (1999). When applying this standard, it must be kept in mind that when fraud is alleged, the circumstances constituting fraud must be plead with particularity. N.C. R. Civ. P. 9(b); s*ee also Terry v. Terry*, 302 N.C. 71, 273 S.E.2d 674 (1981).

III.

ANALYSIS

A.

## CHOICE OF LAW

{25}    SlickEdit's incorporation under the laws of Virginia requires the Court to first address choice of law issues with respect to the claims asserted by Jill Maurer.  In doing so the Court must decide which claims are derivative and which are individual to Ms. Maurer.  The distinction is critical because Ms. Maurer has failed to meet the prerequisites under Virginia law for filing a derivative claim.  Virginia law does not differ significantly from North Carolina law.

{26}    Under North Carolina law, if a derivative claim is asserted against a foreign corporation the courts of this state look to the laws of the state in which the company is incorporated to determine the procedural prerequisites and whether the claim is derivative or individual.  In this action, plaintiff states claims that are derivative.  "In any derivative proceeding in the right of a foreign corporation, the matters covered by this Part shall be governed by the laws of the jurisdiction of incorporation of the foreign corporation . . . ."  N.C. Gen. Stat. § 55-7-47 (2004).  Because SlickEdit is incorporated under the laws of Virginia, the laws of Virginia shall apply to any of plaintiff's claims which are derivative and to determine if they are derivative or individual.  The definition of a derivative action under Virginia law is clear as are the prerequisites to filing a derivative action.

{27}    Under Virginia law, "[t]he test of a derivative action is whether a recovery would benefit the corporation generally and all shareholders or only an individual or a determinative group or class of individuals." *Efessiou v. Efessiou*, 41 Va. Cir. 142, 149, 1996 Va. Cir. LEXIS 464, at *17 (Va. Cir. Ct. 1996).

{28}    "A stockholder in a corporation has no right to bring a suit in his own name in a court of equity upon a cause of action existing in the corporation, and in which the corporation itself is the proper complaintant, except where it actually or virtually refuses to institute or prosecute such suit." *Mount v. Radford Trust Co. et al.*, 93 Va. 427, 430, 25 S.E. 244, 245 (Va. 1896).  "In order that a stockholder may institute such a suit, he must allege and prove that a request or demand has been made upon the board of directors, or other body managing the corporation that they institute proceedings on the part of the corporation against the wrong-doers, and their refusal to do so after reasonable request, or demand." *Id.* at 431, 25 S.E. at 245.  In the alternative, the shareholder "must allege that such a state of facts exists as will show that the defendants whom he charges with wrongdoing are a majority of the board of directors or managing body at the time of the suit or that they, or a majority of them, are under the control of the defendant wrongdoers so that the court may infer that they would refuse to bring such suit." *Richelieu et al. v. Kirby et al.*, 48 Va. Cir. 260, 263-64, 1999 Va. Cir. LEXIS 70, at *8 (Va. Cir. Ct. 1999); *see also* Va. Code Ann. § 13.1-672.1(B) (2004).

{29}    In this matter, plaintiff has not complied with the demand requirements set forth above with respect to any derivative claims.  Therefore, plaintiff's claims which are derivative are dismissed.

### B.
### BREACH OF FIDUCIARY DUTY

{30}    Plaintiff's first claim is for breach of fiduciary duty.  It is an unstructured claim with different elements.  Plaintiff alleges that Defendants Erica and Andre Boisvert breached their fiduciary duties by "self-dealing" behavior: including that the Boisverts obtained their stock from SlickEdit by misrepresentation and received excessive compensation.  Those are essentially derivative claims for which the corporation would be entitled to recover.  In addition, plaintiff contends that Mr. Boisvert breached a separate fiduciary duty he owed plaintiff when he "betrayed Plaintiff's confidence by using his

relationship of trust and confidence to deprive Plaintiff of her royalty rights and a significant portion of her stock in SlickEdit, on the pretense that these actions would lead to the sale of the company." (Pl.'s Resp. Defs.' Mot. Dismiss at 3.) Plaintiff alleges that her claim for this breach of fiduciary duty stems from harm to plaintiff individually rather than as a shareholder. (Pl.'s Resp. Defs.' Mot. Dismiss at 7-8.)

{31} Under Virginia law, the standard by which to evaluate a director's discharge of duties is set forth in Code § 13.1-690. *See* VA. CODE ANN. § 13.1-690; *Willard v. Moneta Building Supply, Inc.* , 258 Va. 140, 150, 515 S.E.2d 277, 284 (1999). The Virginia statute states that "[a] director shall discharge his duties as a director, including his duties as a member of a committee, in accordance with his good faith business judgment of the best interests of the corporation." VA. CODE ANN. § 13.1-690(A). In *Willard*, the Supreme Court found that the statute "does not abrogate the common law duties of a director. It does, however, set the standard by which a director is to discharge those duties." 258 Va. at 151, 515 S.E.2d at 284. The Supreme Court further emphasized that the director's duty is not based upon a reasonable person standard, but rather that a "director must act in accordance with his/her good faith business judgment of what is in the best interests of the corporation." *Id*. at 151, 515 S.E.2d at 284. Plaintiff must allege that defendants breached the duty described in Code § 13.1-690 in order to sustain a claim for breach of fiduciary duty.

{32} Prior to becoming officers or directors of SlickEdit, the Boisverts had no fiduciary duty to plaintiff. When the Boisverts became officers or directors of SlickEdit, they owed fiduciary duties to the corporation, not to plaintiff individually. There are insufficient allegations in the Amended Complaint to establish an individual fiduciary relationship between Jill Maurer and the Boisverts.

{33} Therefore, plaintiff has no claims for breach of fiduciary duty which are not derivative claims. The derivative claims are subject to dismissal.

C.

UNFAIR AND DECEPTIVE TRADE PRACTICES

{34} Plaintiff's second claim is for unfair and deceptive trade practices. In order to state a claim for unfair and deceptive trade practices, plaintiff must allege facts to support a finding that (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff. *See* N.C. Gen. Stat. § 75-1.1(a) ("UDTPA"); *Pleasant Valley Promenade v. Lechmere, Inc.*, 120 N.C. App. 650, 464 S.E.2d 47 (1995).

{35} Plaintiff alleges that defendants engaged in unfair and deceptive trade practices by: (1) firing plaintiff from her position of CEO of SlickEdit; (2) counseling plaintiff to receive a bonus rather than any royalty payments by assuring plaintiff that such bonus payments would continue even if plaintiff left the company and failing to honor that commitment; (3) failing to take meaningful actions to sell the company; (4) denying plaintiff meaningful participation on the Board of SlickEdit; and (5) slandering plaintiff in matters allegedly affecting her position.

{36} The Court will first examine plaintiff's claim of unfair and deceptive trade practices stemming from her termination. Generally, employer-employee relationships do not fall within the intended scope of UDTPA. *Buie v. Daniel International*, 56 N.C. App. 445, 448, 289 S.E.2d 118, 119-20, *disc. review denied*, 305 N.C. 759, 292 S.E.2d 574 (1982). However, the "mere existence of an employer-employee relationship does not in and of itself serve to exclude a party from pursuing an unfair trade or practice claim." *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 710 (2001). For example, in *Sara Lee Corp. v. Carter*, 351 N.C. 27, 519 S.E.2d 308 (1999), an employee was found guilty of a UDTPA claim after

developing and implementing a scheme in which he overcharged his employer for products by buying the products from his own company at inflated prices. Also, in *Kewaunee Scientific Corp. v. Pegram*, 130 N.C. App. 576, 503 S.E.2d 417 (1998), an employee was found guilty of a UDTPA claim after engaging in commercial bribery. These exceptions to the general rule that employer-employee relationships fall outside of the scope of UDTPA are intensely fact specific. The Court of Appeals re-affirmed the employer-employee exception in *Durling v. King*, 146 N.C. App. 483, 554 S.E.2d 1 (2001). In *Durling*, the court emphasized that a successful UDTPA claim depended on whether the defendants' allegedly deceptive acts affected commerce. *Id.* at 488-89, 554 S.E.2d at 4-5.

{37} Here, there are no facts alleged which would dictate that the Court should provide another exception to the general rule that employer-employee relationships fall outside of the scope of UDTPA.

{38} Additionally, to the extent that plaintiff's alleged UDTPA claims are not derivative, plaintiff must meet the requirement that a UDTPA claim must allege facts supporting a finding that the action in question was "in or affecting commerce." N.C. Gen. Stat. § 75-1.1.

{39} North Carolina courts have given guidance as to which actions meet the requirement of "in or affecting commerce" as set forth in UDTPA. As discussed above, typically employer-employee relationships do not fall within the scope of UDTPA. Further, in *Skinner v. E.F. Hutton & Co.*, 314 N.C. 267, 333 S.E.2d 236 (1985), the Supreme Court held that securities transactions are beyond the scope of UDTPA. Again, in *HAJMM v. House of Raeford Farms*, the North Carolina Supreme Court found that securities transactions were beyond the scope of business activities that qualify as "in or affecting commerce" under UDTPA. 328 N.C. 578, 595, 403 S.E.2d 483, 493 (1991). The Supreme Court reasoned that issuing securities was an extraordinary event beyond the regular, day-to-day activities that the statute was meant to regulate. *HAJMM*, 328 N.C. at 593-94, 403 S.E.2d at 493. In *Oberlin Capital v. Slavin*, this Court held that a transaction which included a loan agreement, subordinated debenture, and share purchase warrants did not fall within the scope of UDTPA. 2000 NCBC 6 at ¶ 36. The Court reasoned that the transaction in *Oberlin* did not fall within the regular business activity of the parties involved, but rather was instrumented to raise capital. *Id.*

{40} Plaintiff's claims, to the extent that they are not derivative, attempt to create liability for matters of the internal operations of a corporation. These claims do not relate to the regular business activities of SlickEdit. Instead, plaintiff's claims relate to the internal corporate affairs of SlickEdit. These matters involve internal governance rather than extramural commerce. The intent of UDTPA was to protect and benefit consumers, *Pearce v. American Defender Life Ins. Co.*, 316 N.C. 461, 469, 343 S.E.2d 174, 179 (1986). Plaintiff fails to state a claim for unfair and deceptive trade practices.

## D.

## OPPRESSION

{41} Plaintiff's third claim is for oppression. Plaintiff alleges that defendant's conduct and domination of the company to the detriment of the rights of plaintiff constitutes oppression. Further, plaintiff alleges that as a significant shareholder and key employee in a close corporation, plaintiff had a reasonable expectation of continued employment, and her expectations have been frustrated by the actions of the individual defendants. Specifically, plaintiff contends that the restructuring of the royalty agreement into an employment agreement and the subsequent termination of the employment agreement constituted oppression. Plaintiff also cites the lack of an attempt to sell the company as oppression. Further, plaintiff alleges that Defendant Erica Boisvert's alleged resistance to a distribution for plaintiff's use to pay taxes

constitutes oppression. Finally, plaintiff contends that defendants' denial of "any meaningful participation" for plaintiff as a board member of SlickEdit constitutes oppression. Due to the alleged oppression, plaintiff now seeks an order dissolving SlickEdit as a corporation and distributing all its assets to its shareholders, or in the alternative, an order reinstating her as CEO and re-establishing her royalty payments and other benefits.

{42}   Plaintiff brings her claim for dissolution under Va. Code Ann. § 13.1-747(A)(1)(b), which states that the circuit court in any city or county described in section C of statute may dissolve a corporation if in a proceeding by a shareholder it is established that: "The directors or those in control of the corporation have acted, are acting, or will act in a manner that is illegal, oppressive, or fraudulent." VA. CODE ANN. § 13.1-747(A)(1)(b). Section C of the statute states that "[v]enue for a proceeding brought under this section lies in the city or county where the corporation's principal office is or was located, or, if none in this Commonwealth, where its registered office is or was last located." VA. CODE ANN. § 13.1-747(C).

{43}   In Virginia, the term "oppressive," as used in the statute, has been interpreted as "conduct by corporate managers toward stockholders which departs from the standards of fair dealing and violates the principles of fair play on which persons who entrust their funds to a corporation are entitled to rely." *Giannotti v. Hamway*, 239 Va. 14, 23, 387 S.E.2d 725, 730 (1990). Furthermore, "'oppressive' is not synonymous with 'illegal' and 'fraudulent'" nor does it "carry an essential inference of imminent disaster; it can contemplate a continuing course of conduct." *White v. Perkins*, 213 Va. 129, 134, 189 S.E.2d 315, 319 (1972).

{44}   Plaintiff cites two cases as instructive on court interpretation of oppressive conduct warranting the application of dissolution. In *Giannotti*, the court found that the defendant majority shareholders had acted oppressively within the meaning of the statute. 239 Va. at 25, 387 S.E.2d at 731. The plaintiff minority shareholders claimed that the defendants' oppressive conduct consisted of "excessive compensation; improper 'related party transactions'; and inadequate dividends paid to stockholders." *Id.* at 20, 387 S.E.2d at 729. The court found that "[t]he defendant's conduct was egregious, domineering, blatantly unfair, and prejudicial to the plaintiffs. This is a well-documented case of 'harsh and long-continued oppression.'" *Id.* at 28, 387 S.E.2d at 733. Under these factual findings, the court found that dissolution was properly imposed by the trial court. *Id.* at 28, 387 S.E.2d at 733. In *White*, the defendant majority shareholder engaged in self-dealing by using corporate funds to pay for equipment to be installed at an unrelated company and billing the company for services that the corporation was not obligated to pay. 213 Va. at 132-33, 189 S.E.2d at 318-19.

{45}   Recently, in *Willard*, *supra*, the Supreme Court of Virginia found that the majority shareholders' determination to sell the company's assets did not constitute oppression as defined by the statute. 258 Va. at 156-57, 515 S.E.2d at 288. The court reasoned that "the holders of the majority of the shares of a corporation have the right and the power, by the election of directors and by the vote of their stock, to determine the policy of their corporation and to manage and control its action." *Id.* at 157, 515 S.E.2d at 288.

{46}   In *Summers v. Viamac, Inc.*, 45 Va. Cir. 201, 1998 Va. Cir. LEXIS 55 (1998), the court explained that "[c]orporate oppression is the taking of unfair advantage of certain stockholders, by those in control of a corporation, in such a manner that those stockholders are denied the rights to which they are entitled by virtue of their investment." 45 Va. Cir. at 202, 1998 Va. Cir. LEXIS at *2 (citing *Giannotti v. Hamway*, 239 Va. 14, 387 S.E.2d 725 (1990)). In *Summers*, the plaintiff, who was a director, officer, employee, and

minority shareholder of the defendant corporation, was terminated. 45 Va. Cir. at 201, 1998 Va. Cir. LEXIS at *1. At approximately the same time, a major stockholder and president of defendant corporation offered to purchase the plaintiff's shares of stock at a price that the plaintiff considered unreasonably low. *Id.* at 201, 1998 Va. Cir. LEXIS at *1. The plaintiff claimed that the defendant's actions constituted oppression as set forth in § 13.1-747 and sued for corporate dissolution. *Id.* at 201, 1998 Va. Cir. LEXIS at *1. The court held that the defendant's actions did not constitute oppression within the contemplation of § 13.1-747. *Id.* at 203, 1998 Va. Cir. LEXIS at *5. The court reasoned that because the plaintiff was an at-will employee, his employment relationship was separate and distinct from his rights in his role as a stockholder. *Id.* at 203, 1998 Va. Cir. LEXIS at *5.

{47} The Court finds that the allegedly oppressive conduct set forth by plaintiff does not fall within the scope of Va. Code Ann. § 13.1-747. Moreover, the allegedly oppressive conduct in this case does not reasonably compare to the level of egregious conduct found to be oppressive in *Giannotti* and *White*.

{48} In the present case, plaintiff had an employment contract which stated that she could be terminated at-will without cause. Further, at the time that plaintiff alleges that she was oppressively forced to change her employment contract to receive bonus payments, she was the CEO and 42.5% shareholder. Plaintiff executed the contract of her own accord. Her subsequent termination does not constitute oppression within the scope of § 13.1-747. The other conduct alleged to be oppressive by plaintiff does not fall within the scope of § 13.1-747.

{49} In addition, the plaintiff argues that her expectations were frustrated by the allegedly oppressive behavior. Virginia has no *Meiselman*-type law.[1] In *Simmons v. Miller*, 261 Va. 561, 544 S.E.2d 666 (2001) the court acknowledged that some states had allowed an exception for minority shareholders in closely-held corporations to bring a claim directly. *Id.* at 575, 544 S.E.2d at 675. However, the court declined to deviate from the established rule under Virginia corporate law which necessitates that claims on behalf of the company must be brought derivatively rather than by individual shareholders. The court stated:

> We decline to adopt a closely held corporation exception to the rule requiring that suits for breach of fiduciary duty against officers and directors must be brought derivatively on behalf of the corporation and not as individual shareholder claims. Adherence to the general rule without this proposed exception prevents multiplicity of lawsuits by shareholders. A recovery by the corporation protects all shareholders as well as creditors. Finally, as expressed in Bagdon, consistent application of commercial rules promotes predictability. If shareholders and the corporation desire to vary commercial rules by contract, they are free to do so.

*Id.* at 576, 544 S.E.2d at 675. Therefore, to the extent that plaintiff seeks to bring a direct claim which would allow recovery based upon the frustration of her expectations, no such claim is permissible under Virginia law.

{50} If Virginia had a *Meiselman*-type law, it would not allow plaintiff to recover for her allegedly frustrated expectations of continued employment. In *Crowder v. Kiser*, 134 N.C. App. 190, 517 S.E.2d 178 (1999) *cert. denied*, 351 N.C. 101, 541 S.E.2d 142 (1999), the Plaintiff Crowder Construction Company sought specific compliance with a stock purchase agreement against the Defendant Kiser, a terminated employee. The defendant claimed that the stock purchase agreement was unconscionable. Rather than weighing the unconscionability of the agreement pursuant to established contract law, the defendant asked the court to weigh the unconscionability of the agreement in light of his "reasonable

expectations" of being able to complete his employment and realize the full value for his shares of stock. *Id.* at 207, 517 S.E.2d at 190. The defendant relied upon *Meiselman* in his argument.

{51}    After first stating that *Meiselman* was distinguishable and did not control its decision, the court continued:

> We decline to adopt a "reasonable expectations" approach here, since such an approach would render the objective language of the written contract nugatory, would be contrary to the express purposes for entering into stock restriction and purchase agreements, and would inevitably lead to uncertainty, delay and expense as the trial courts attempt to determine the "expectations" of a terminated employee, and to further determine whether those expectations were "reasonable."

*Id.* at 207, 517 S.E.2d at 190. Similarly in the present case, plaintiff executed an employment agreement which specifically allowed for her termination at-will. To the extent that plaintiff bases her oppression claim upon her termination, the language of the contract negates plaintiff's argument that her reasonable expectations were frustrated.

{52}    Finally, plaintiff seeks dissolution based upon Va. Code Ann. § 13.1-747. Under Va. Code Ann. § 13.1-747, dissolution may only be granted by the circuit court "in the city or county where the corporation's principal office is or was located, or, if none in this Commonwealth, where its registered office is or was last located." VA. CODE ANN. § 13.1-747(C). This Court cannot dissolve Virginia corporations.

## E.
## CONSTRUCTIVE FRAUD

{53}    Plaintiff bases her claim of constructive fraud on defendant's alleged breach of fiduciary duty. "[A] breach of fiduciary duty amounts to constructive fraud." *Compton v. Kirby*, 157 N.C. App. 1, 16, 577 S.E.2d 905, 914 (2003). Because the Court dismisses plaintiff's claim for breach of fiduciary duty, plaintiff has no claim for constructive fraud.

## F.
## FRAUD

{54}    Since this is a Rule 12(b)(6) motion, the Court must interpret the complaint broadly. There is in the Amended Complaint sufficient allegation, not plead with great clarity, to the effect that the Boisverts fraudulently induced Jill Maurer into supporting their employment by SlickEdit and the issuance of stock to them by representing to her that they would work and exercise their voting rights to sell the company at a fair price when they had no intention to do so. Plaintiff's allegations are sufficiently broad to include a claim for damages at least in respect to the loss of a seven and a half percent interest in the corporation.

{55}    No fraud claim exists on behalf of the corporation because Clark Maurer, then a fifty percent shareholder and director does not join in those claims. They are individual to Jill Maurer and if they belonged to the company, they would be derivative.

{56}    Because there are no allegations that Clark Maurer participated in the Boisverts alleged fraudulent inducement, no viable fraud claim has be asserted against him.

{57}    Pursuant to North Carolina Rules of Civil Procedure Rule 15, the Court may grant leave to file an amended pleading. The rule states:

> A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time

within 30 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within 30 days after service of the amended pleading, unless the court otherwise orders.

N.C. R. Civ. P. 15(a). Thus, the Court is free in this instance to allow plaintiff leave to amend her complaint on this claim.

## G.
## CIVIL CONSPIRACY

{58} Plaintiff's sixth claim is for civil conspiracy against defendants Andre and Erica Boisvert. Plaintiff alleges that defendants Andre and Erica Boisvert conspired in an agreement to commit a breach of fiduciary duty, fraud, unfair and deceptive trade practices and slander. Plaintiff alleges that the resultant injuries stemming from the Boisvert's illegal agreement include the loss of employment, loss of royalty payments, loss of proceeds from a potential sale of the company, loss of meaningful participation on the Board of Directors, and damage to plaintiff's reputation. (Pl.'s Resp. Def.'s Mot. Dismiss at 12-13.)

{59} "A civil conspiracy claim consists of: (1) an agreement between two or more persons; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) which agreement resulted in injury to the plaintiff." *Boyd v. Drum*, 129 N.C. App. 586, 592, 501 S.E.2d 91, 96 (1998), *aff'd* 350 N.C. 90, 511 S.E.2d 304 (1999). "Although an action for civil conspiracy may be established by circumstantial evidence, sufficient evidence of the agreement must exist 'to create more than a suspicion or conjecture in order to justify submission of the issue to a jury.'" *Id.* at 592, S.E.2d at 96 *quoting Dickens v. Puryear*, 302 N.C. 437, 456, 276 S.E.2d 325, 337 (1981). North Carolina does not recognize civil conspiracy as an independent cause of action. *Toomer v. Garrett*, 155 N.C. App. 462, 483, 574 S.E.2d 76, 92 (2002).

{60} Here, if the Boisverts combined to perpetrate the fraud, they would be joint tortfeasors and there would be no need for a civil conspiracy claim. It is duplicative and redundant.

{61} Plaintiff's claim against the corporation is barred by the intracorporate immunity doctrine. "Alleging that a corporation is conspiring with its agents, officers or employees is accusing a corporation of conspiring with itself." *Garlock v. Hilliard*, 2000 NCBC 11 at ¶ 26 (Mecklenburg County Super. Ct. Aug. 22, 2000) (Tennille, J.). An exception to the doctrine exists if the officers were acting on behalf of an "independent personal stake." *Id.* at ¶ 27. However, this exception is to be interpreted narrowly and is not triggered by an officer's interest in the corporation's profitability. *Id.* Because defendants Andre and Erica Boisvert are officers and directors of SlickEdit, they are entitled to intracorporate immunity against plaintiff's conspiracy claim. So is Clark Maurer. Again, there are no allegations that Clark Maurer participated in any scheme to defraud Jill Maurer. Plaintiff alleges he signed the same type agreements she signed.

## H.
## UNJUST ENRICHMENT

{62} Plaintiff's seventh claim is for unjust enrichment against Defendants Andre and Erica Boisvert. In order to recover on a claim for unjust enrichment, a plaintiff must show that she conferred a benefit on the defendant, that the defendant consciously accepted the benefit, and that the benefit was not conferred gratuitously or by an interference in the affairs of the defendant. *See Southeastern Shelter Corp. v. BTU, Inc.*, 154 N.C. App. 321, 330, 572 S.E.2d 200, 206 (2002).

{63} Plaintiff claims the conferral of a percentage of ownership of SlickEdit to the Boisverts was given

without compensation. Plaintiff alleges that the Boisverts agreed to help position SlickEdit for sale in exchange for the percentage of ownership. Further, plaintiff alleges that the Boisverts were unjustly enriched indirectly in the form of salary increases and the debt forgiveness of Erica Boisvert. Those are derivative claims. They belong to the corporation.

{64} To the extent that plaintiff's claims are derivative, Virginia law applies. As discussed above, under Virginia law, plaintiff's derivative claims fail as a matter of law for failure to comply with the statutory requirement of demand.

{65} In addition, plaintiff's claim for unjust enrichment fails in that she does not allege that she directly conferred a benefit on Defendant or that Defendant accepted a benefit from her. The benefit was given by SlickEdit.

## I.
## RESCISSION AND REFORMATION

{66} Plaintiff's eighth claim is for the rescission and reformation of the agreement under which the Boisverts obtained their shares in SlickEdit and the agreement under which the Maurers' royalty rights were conveyed to SlickEdit. Plaintiff also contends that her employment agreement may be subject to rescission and/or reformation given that the agreement was fraudulently induced. (*See* Pl.'s Resp. Defs.' Mot. Dismiss at 15.)

{67} A court may order the rescission of an agreement induced by fraud or mistake. *See Mills v. Dunk*, 263 N.C. 742, 746, 140 S.E.2d 358, 361 (1965). Plaintiff has plead that the agreements under which the Boisverts obtained their shares in SlickEdit were fraudulently induced as to her individually. Further, plaintiff has not sufficiently plead that the agreement under which the Maurers' royalty rights were conveyed to SlickEdit was fraudulently induced. Mr. Maurer owned those rights. Finally, plaintiff has plead in her amended complaint that her employment agreement may be the subject of rescission and reformation with respect to the four percent bonus surviving her termination. She has sufficiently alleged that there may be grounds for rescission or reformation of that contract which would entitle her to an ongoing distribution.

## J.
## SLANDER

{68} Plaintiff's ninth claim is for slander. Pursuant to North Carolina Rules of Civil Procedure Rule 15, the Court may grant leave to file an amended pleading. The rule states:

> A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 30 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within 30 days after service of the amended pleading, unless the court otherwise orders.

N.C. R. Civ. P. 15(a). Thus, the Court is free in this instance to allow plaintiff leave to amend her complaint on this claim. The second amended complaint does allege slander with sufficient particularity.

## CONCLUSION

{69} In many respects, this is a domestic case disguised as a derivative action. In sorting through the claims two causes of action become clear. First, Jill Maurer alleges that the Boisverts induced her into letting them get stock ownership and employment by falsely representing that they would vote and work

to position the company for sale when they intended to obtain employment for themselves. The amended complaint can be read to assert a personal claim for damages for fraudulent inducement. There is no allegation that Clark Maurer made any representation to Jill Maurer with respect to the Boisverts, either true or false. The second claim which is properly plead is a claim for rescission or reformation of her employment agreement, particularly as it relates to the termination of the bonus which was allegedly in lieu of the right to royalties which belonged to the Maurers and was allegedly split as part of their domestic settlement.

{70} The other shareholder claims are subject to dismissal either because plaintiff has failed to fulfill the demand requirement, the Virginia law does not permit the claims or the allegations in the Complaint are insufficient. At the heart of the dispute is Jill Maurer's desire to see the company sold. As a minority shareholder, she may not force a sale. She has not alleged that the company is being mismanaged, is losing money or that the assets are being dissipated. She does not like the salaries being paid to the Boisverts, but that is a derivative claim.

{71} The proposed second amended complaint alleges a slander claim with sufficient specificity to withstand a motion to dismiss and plaintiff may amend her complaint to include those allegations.

{72} Based upon the foregoing, it is hereby ORDERED, ADJUDGED, and DECREED:

    1. Defendants' motion to dismiss plaintiff's claim for breach of fiduciary duty is GRANTED.

    2. Defendants' motion to dismiss plaintiff's claim for unfair and deceptive trade practices is GRANTED.

    3. Defendants' motion to dismiss plaintiff's claim for oppression is GRANTED.

    4. Defendants' motion to dismiss plaintiff's claim for constructive fraud is GRANTED.

    5. Defendants' motion to dismiss plaintiff's claim for fraud is DENIED as to the Boisverts with leave to file an Amended Complaint with more specific allegations. To the extent that any fraud is alleged against Clark Maurer, defendant's motion to dismiss is GRANTED.

    6. Defendants' motion to dismiss plaintiff's claim for civil conspiracy is GRANTED.

    7. Defendants' motion to dismiss plaintiff's claim for unjust enrichment is GRANTED.

    8. Defendants' motion to dismiss plaintiff's claim for rescission and reformation of her employment agreement is DENIED.

    9. Defendants' motion to dismiss plaintiff's claim for rescission and reformation of the agreement under which the Boisverts obtained their shares in SlickEdit is GRANTED.

    10. Defendants' motion to dismiss plaintiff's claim for slander is DENIED.

{73} On plaintiff's motion to amend the complaint, the Court GRANTS leave to file an amended complaint which complies with this order.

IT IS SO ORDERED, this the 16th day of May, 2005.

---

[1] In *Meiselman v. Meiselman*, 309 N.C. 279, 307 S.E.2d 551 (1983), the Supreme Court allowed a minority shareholder in a closely-held corporation to recover in a direct suit rather than a derivative suit based upon the frustration of his reasonable expectations of continued employment and meaningful participation in management decisions.